IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LITTLE GIANT PUMP COMPANY,<br>an Oklahoma corporation,<br><br>    Plaintiff and Counterclaim<br>    Defendant,<br><br>v.<br><br>DIVERSITECH CORPORATION,<br>a Georgia corporation,<br><br>    Defendant and Counterclaim<br>    Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. CIV-06-1088-L<br>)<br>)<br>)<br>)<br>)<br>) |

## **O R D E R**

Plaintiff, Little Giant Pump Company, is the assignee of Patent No. 6,322,326 issued by the United States Patent and Trademark Office on November 27, 2001.[1] The '326 patent is directed to a modular condensate pump assembly, which plaintiff has manufactured and sold to – among others – defendant, DiversiTech Corporation. Complaint at ¶¶ 7-8 (Doc. No. 1); Defendant's Answer and Counterclaim at 2 (Doc. No. 11). Defendant manufactures products for the heating, ventilating, air conditioning, and refrigeration industry and recently began selling its own condensate pump assembly. Complaint at ¶ 9-10; Answer at 2. On October 4, 2006, plaintiff filed this action seeking damages for defendant's alleged

---

[1] Exhibit 1(A) to Defendant Diversitech Corporation's Motion for Summary Judgment and Brief in Support [hereinafter cited as "Defendant's Motion"]; Exhibit 1(B) to Defendant's Motion at 107-111.

infringement of the '326 patent. Defendant denies that its pump assembly infringes plaintiff's patent and counterclaims for declaratory relief. Defendant seeks a declaration that the '326 patent is invalid, void, and unenforceable and that it has not infringed the patent.

This matter is before the court on defendant's motion for summary judgment. Summary judgment is appropriate if the pleadings and affidavits "show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather, the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). *See also*, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

The undisputed facts establish that the '326 patent was issued on November 27, 2001 based on the January 21, 2000 application of inventors Lee W. Davis, D.W.

Hearn, Jr., David Thomas Springer, James J. Coffey, and Jon David Currier. Exhibit 1(A) to Defendant's Motion at 1. The patent contains four independent claims and sixteen dependent claims. Each of the independent claims limits the invention to:

> A condensate pump assembly for pumping a condensate liquid, comprising:
>
> a collection tank;
>
> a support plate *removably supported* by the collection tank;
>
> a pump assembly *removably supported* by the support plate and extending into the collection tank . . . .

Id. at 5:23-30 (emphasis added).[2] *See also* id. at 5:37-43; 6:63-7:3; 7:15-22. The specification describes the support plate as attaching to the collection tank by compression force; in the preferred embodiment, the collection tank "is made of a semi-rigid plastic such as acetyl butadiene styrene so that the walls can be partially deformed for the release and removal of the support plate." Exhibit 1(A) to Defendant's Motion at 2:60-63. The pump assembly as described in the specification is "a completely operable, stand alone unit when removed from the support plate". Id. at 3:54-56. Figure 6 shows the pump assembly attached to the support plate by screw fasteners. Id. at Sheet 4; *see also* id. at 4:1-3. In contrast, the accused device relies on rivets to attach the pump assembly to its support plate.

---

[2]The language in Claims 13 and 14 varies slightly from the language quoted. The language at issue in this motion, however, is identical in all four claims.

Declaration of Keith Platt at ¶ 16.  Defendant contends this distinction is critical to the infringement analysis.

Defendant argues that because its pump assembly is attached to the support plate by rivets, it cannot infringe the '326 patent as a matter of law.  Whether defendant is entitled to a summary adjudication of non-infringement thus rests on the court's construction of the term "removably supported."  Construction of claims is a question of law.  PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1362 (Fed. Cir. 2005).  There is a "heavy presumption" that words used in patent claims are "'given their ordinary and customary meaning,'" that is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention."  Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 126 S. Ct. 1332 (2006) (citation omitted).  *See also* Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1202 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 1058 (2003) (collecting cases).  Because the claims "do not stand alone", however, they must be interpreted in light of the specification.  As the Federal Circuit reiterated in Phillips, "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  Phillips, 415 F.3d at 1315 (*quoting* Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  Moreover, where the same term appears in more than one claim, it is presumed that the terms have "the same meaning unless it is clear from the specification and prosecution history that

the terms have different meanings at different portions of the claims." Fin Control Sys. Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 1318 (Fed. Cir. 2001).

Once the claims have been construed, the analysis requires that the claim in question "be compared to the accused device or process." PC Connector Solutions LLC, 406 F.3d at 1362. It is at this second step that a determination of infringement is made; whether a device infringes literally or under the doctrine of equivalents is a question of fact. Lockheed Martin Corp. v. Space Sys./Loral, Inc., 324 F.3d 1308, 1318 (Fed. Cir. 2003). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." Southwall Tech., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir.), *cert. denied*, 516 U.S. 987 (1995). If even a single limitation is not present in the accused device, literal infringement does not exist as a matter of law. Such a device, however, can still be found to infringe a patent under the doctrine of equivalents. This doctrine provides that "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 21 (1997). The doctrine recognizes

> that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for – indeed encourage – the unscrupulous copyist to make

>unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law.

Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607 (1950).  Under the doctrine of equivalents, a product can infringe an asserted patent claim if it includes parts that are equivalent to the limitations recited in the claim.  If the accused product is missing an equivalent element to even one limitation recited in the asserted patent claim, it cannot infringe the claim under the doctrine of equivalents.  AquaTex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374, 1382 (Fed. Cir. 2005).  A claim limitation is present in an accused product under the doctrine of equivalents if the differences between the claim limitation and a comparable element of the accused product are insubstantial.  Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 469 F.3d 1005, 1017-18 (Fed. Cir. 2006).  In making that determination, the court examines whether the comparable element of the accused device "'performs substantially the same function, in substantially the same way to obtain the same result' as the claim limitation."  AquaTex Indus., Inc., 419 F.3d at 1382 (quoting Graver Tank & Mfg. Co., 339 U.S. at 608).  Nonetheless, the doctrine of equivalents cannot be used to vitiate a claim limitation, nor can it expand a limitation to the point that it embraces a structure explicitly or implicitly excluded from the claim.  Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188, 1195 (Fed. Cir. 2005).

In the main, the parties do not dispute the meaning of the term "removably supported." Both parties agree that the court should construe "removably supported" to mean "supported by and being removable from". *Compare* Defendant's Motion at 6 *with* Plaintiff's Response and Brief in Opposition to Defendant's Motion for Summary Judgment at 12 [hereinafter cited as "Plaintiff's Response"]. Where the parties diverge is defendant's contention that "removably supported" necessarily excludes all permanent means of attachment, including the use of rivets. Plaintiff counters that the claims of the '326 patent do not specify the type of fasteners to be used and, in any event, rivets are not permanent fasteners because they can be removed. In support of its contention that rivets are removable, plaintiff offers the affidavit of its Vice President of Engineering, Lawrence J. Cammuso. Mr. Cammuso asserts that "rivets may be removed by using a drill with a drill bit, a rivet removal tool and other tools" and that the rivets used in the accused device "could readily be removed and replaced both during manufacturing and in the field." Exhibit 2 to Plaintiff's Response at ¶ 19. Once removed, however, the rivets are not reusable; the pump assembly must therefore be reattached using new rivets or bolts and nuts. Id. at ¶ 21.

Like the Court in K-2 Corp. v. Salomon S.A., 191 F.3d 1356 (Fed. Cir. 1999), this court need not confront the existential question of whether any fastener can truly be considered permanent. As the Court noted, and the parties in this case agree, a "rivet-made permanent connection is of course not 'infinitely' permanent, because

a rivet can be broken." Id. at 1365.  The common, ordinary meaning of removable or removably, however, does not include breaking what is meant to be a permanent connection.  The court's understanding that rivets are considered permanent connections is reinforced by the extrinsic evidence.  *See* Exhibit 2(A) to Defendant's Motion at 318 ("[r]ivets are permanent shear fasteners"); Exhibit 2(B) to Defendant's Motion at 824 ("The most common method of permanent or semipermanent mechanical joining is by *riveting*.") (emphasis in original).  The intrinsic difference between removable fasteners, such as screws and nuts and bolt assemblies, and rivets, which are meant to form a permanent bond, was likewise recognized by the Court in K-2 Corp.

> Screws, unlike rivets and laminates, are meant to be unscrewed, that is, to be removed.  A rivet or laminate, to the contrary, is meant to remain permanent, unremovable unless one is bent on breaking the permanent structure apart.

K-2 Corp., 191 F.3d at 1365.  A component cannot be "removably supported" if it is attached using fasteners that are meant to be permanent and not removed.  As the accused pump is attached to its support plate by rivets, it cannot meet the "removably supported" claim limitation.  Thus, as a matter of law, defendant's pump assembly does not literally infringe the '326 patent.

The court also finds plaintiff cannot establish infringement under the doctrine of equivalents.  An element that is implicitly excluded by the claim limitations cannot be resurrected under the doctrine of equivalents.  To do so would violate a corollary

of the all limitations rule "that 'the concept of equivalency cannot embrace a structure that is specifically excluded from the scope of the claims.'" Cook Biotech Inc. v. Acell, Inc., 460 F.3d 1365, 1379 (Fed. Cir. 2006) (citation omitted).  The court finds that a proper construction of the term "removably supported" necessarily excludes any means of permanent attachment.  Attachment of the pump assembly by means of permanent attachments such as rivets is the antithesis of "removably supported." Furthermore, no embodiment of the '326 patent includes permanently attached modular units.  Indeed, it would defeat the object of the patent if the modular components were attached with permanent-type fasteners[3] and the specification notes the ease of removability of the component parts.[4]  To hold that components that are permanently attached are equivalent to "removably supported" components would effectively read the "removably" limitation out of the patent.  This the court cannot do.  *See* Asyst Techs., Inc., 402 F.3d at 1195.  Thus, as a matter of law, plaintiff cannot establish infringement under the doctrine of equivalents.

---

[3]The declared object of the invention "is to provide an improved condensate pump assembly that is of modular design and which offers installation flexibility, field serviceability and economy of manufacture."  Exhibit 1(A) to Defendant's Motion at 1:60-63.  The patent contrasts its invention with prior art pumps that "are serviceable largely by replacement.  That is, such devices are not economically repaired at field sites."  Id. at 1:41-42.

[4]*See* Exhibit 1(A) to Defendant's Motion at 3:13-17 ("The shape and dimensions of the cover 16 are determined to provide cover to the components described below and is easily removable from the support plate 14 by removing the screw 36A, to provide access to the enclosed components."); id. at 4:24-27 ("The quick disconnect terminals 86 of the power harness 80 permit easy removal of the pump assembly 40 from the condensate pump assembly 10 and thereby to be operationally tested prior to assembly into the condensate pump assembly."); id. at 4:57-59 ("Both the switch 84 and the safety switch 92 are readily removable from the support plate 14 for ease of assembly and replacement.").

In sum, based on the correct claim construction of the term "removably supported" there is no material issue of fact for a jury to resolve.[5]  Defendant DiversiTech Corporation's Motion for Summary Judgment (Doc. No. 17) is therefore GRANTED.  As defendant did not seek summary judgment on its validity counterclaim, final judgment must await resolution of that claim.

It is so ordered this 24th day of April, 2007.

_____
TIM LEONARD
United States District Judge

---

[5] Given the court's claim construction, there is also no need for the discovery requested by plaintiff in response to defendant's motion.  Plaintiff sought discovery into "the use and removal of rivets in Defendant's condensate pump assembly, manufacturing processes and other issues relating to Defendant's motion."  Affidavit of Lawrence J. Cammuso at 26.  Plaintiff's request that the court stay ruling on defendant's motion pursuant to Fed. R. Civ. P. 56(f) is therefore denied.